DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, George Robinson, Jr., appeals from his convictions in the Summit County Court of Common Pleas. We affirm.
 I.
On June 15, 2006, Appellant visited Mayflower Manor ("the Mayflower") in Akron, Ohio. The alleged victim, Walter Frazier ("Frazier"), lived in the Mayflower. Appellant and an acquaintance, Marshall Williams ("Williams"), also a resident of the Mayflower, went to Frazier's apartment intending to sell him meat. Frazier purchased the meat. According to the Mayflower surveillance tapes, Appellant remained in Frazier's apartment while Williams left two times. After Williams returned the last time to Frazier's apartment, Williams and Appellant left together. Approximately twenty minutes later, Appellant returned to Frazier's apartment alone.
 {¶ 2} The subsequent events are in dispute. Appellant claims he returned to finish a drug exchange and that Frazier allowed him to reenter his apartment. He further claims that while waiting for Williams to return to Frazier's apartment, Frazier hit him on the back of the head with an ashtray, and approached him with a knife. Appellant contends he hit Frazier twice in the mouth and tied his hands together with a telephone cord in an effort to defend himself. Appellant then claims he left the apartment. The State, however, claims Appellant began punching Frazier as soon as Frazier opened the door. Frazier denied the allegation that the incident was drug related. The State contends that these blows forced Frazier back into his apartment where Appellant tied his hands together with a telephone and sweeper cord, took $50 to $75 from Frazier's wallet and crammed a rag in his mouth. It is undisputed that after the encounter, Frazier left his apartment and encountered his relatives in the hallway. His relatives untied him and called the police.
 {¶ 3} On June 27, 2005, Appellant was indicted on one count of aggravated burglary under R.C. 2911.11(A)(1), one count of aggravated robbery under R.C. 2911.01(A)(3), one count of kidnapping under R.C. 2905.01(A)(2), one count of disrupting public services under R.C. 2909.04(A)(1) and one count of theft from the elderly under R.C. 2913.02. Appellant pled not guilty to all charges. A jury trial was held on September 29 and 30, 2005. At the close of the State's case, Appellant moved for a Crim.R. 29 motion for acquittal specifically on the counts of aggravated burglary, aggravated robbery and kidnapping. The trial court overruled the motion. At the close of all evidence, Appellant again unsuccessfully moved for a Crim.R. 29 motion for acquittal. Appellant was convicted of aggravated robbery, unlawful restraint, disrupting public services and theft from the elderly. He was acquitted of all other charges. He was sentenced to concurrent terms of six years, ninety days, one year and one year, respectively. Appellant filed a timely notice of appeal, raising three assignments of error for our review.
 II. ASSIGNMENT OF ERROR I
"APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
 ASSIGNMENT OF ERROR II
"APPELLANT'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE[.]"
 {¶ 4} In his first two assignments of error, Appellant claims that his conviction was against the manifest weight of the evidence and was based on insufficient evidence. An evaluation of the weight of the evidence is dispositive of both issues in this case.
 {¶ 5} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *4, citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (overruled on other grounds). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *5.
 {¶ 6} Therefore, we will address Appellant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of Appellant's claim of insufficiency.
 {¶ 7} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 8} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 9} Appellant argues that his convictions for aggravated robbery and theft from the elderly are against the manifest weight of the evidence because Frazier's testimony was inherently unreliable and contradicted by the State's evidence. Specifically, Appellant argues that Frazier's testimony is contradicted by Michael Melvin, the Mayflower superintendent.
 {¶ 10} Frazier testified to the following: On June 15, 2005, Williams, another tenant in the Mayflower, brought Appellant to his door to sell him some meat. He purchased the meat from them for $15. After he gave them the money, the two men left. Approximately 15 to 20 minutes later, Appellant returned and knocked on the door. When Frazier opened the door, Appellant immediately punched him in the face and head. Appellant pushed him back into the apartment, into the living room and onto the couch, where he continued to beat him. Frazier picked up an ashtray, but Appellant made him put it away. Due to the blows to his face, Frazier lost two teeth.
 {¶ 11} Frazier had three working telephones in his home, one of which was in the living room where the incident occurred. Appellant cut the phone cord and a cord from a sweeper and tied Frazier's hands together. Appellant then took $50 or $57 from Frazier's wallet, which was in his pocket at the time, and warned him not to tell the police. Appellant balled up a rag and crammed it in Frazier's mouth, then removed it before he left. Frazier stayed in his apartment for a few moments after Appellant left, then entered the hallway, where he ran into his cousins. His hands were still tied. They untied him and went down the elevator to the building manager. They came back up to change his shirt because it was covered in blood.
 {¶ 12} On cross examination, Frazier testified that he was 65 years old and had lived at the Mayflower for seven years. He stated that it was not a common practice at the Mayflower to sell meat door to door. He further testified that after selling him the meat, Appellant and Williams left right away. He stated that after they left and before Appellant returned alone, no one else came to the apartment. Frazier further explained that when he opened the door to Appellant's knocking, Appellant was almost inside the door when he punched Frazier in the face. Frazier stated that Appellant hit him more than ten times. He denied hitting Appellant in the head with the ashtray. He stated that Appellant took around $57 from his wallet. He further explained that "it was something like that[,] * * * it was somewhere in that neighborhood." Appellant's Counsel next asked Frazier whether he told the police that Appellant took $57 from him and Frazier stated that he told them about the money when he got downstairs. Frazier testified that Appellant left immediately after he took the money. Frazier stated that after he initially brought Appellant to Frazier's apartment, Williams never returned. Frazier stated that he had heard of drug dealings in the Mayflower but had never seen it and denied any drug use on his part.
 {¶ 13} On redirect, Frazier testified that he received treatment at Akron General for his lip and that he received stitches. He stated that he was five feet, seven inches tall, and weighed 114 pounds. He also stated that he was in poor health.
 {¶ 14} Michael Melvin ("Melvin") also testified for the State. He testified to the following: He is the superintendent of the Mayflower and, as such, he is responsible for surveillance. There are 36 cameras throughout the building. On June 15, 2005, there was a camera located in a hallway on the thirteenth floor, where Frazier's apartment was located. The cameras are turned on by motion. They are not on continuously. The camera on the thirteenth floor was located in a corner and could only detect motion about three-fourths of the way down the hall. The camera also records the exact time and date of the movement.
 {¶ 15} He described the events that were caught by the camera on June 15, 2005. At 1:13 p.m. Williams and Appellant walked towards Frazier's apartment. Because the motion sensor only worked part way down the hall, the camera only caught them walking towards it. It then showed Williams returning alone from the direction of Frazier's apartment, then, later returning back towards Frazier's apartment with a grocery bag. It then showed Williams return again from the direction of Frazier's apartment and again return to Frazier's. At 1:34 p.m., both Williams and Appellant left Frazier's apartment. At 1:48 p.m., Appellant returned alone towards Frazier's apartment. At 1:57 p.m., a neighboring tenant, Camilla. Malone ("Malone") exited her apartment and paced the hallway several times. At 2:04 p.m. she came out of her apartment again, headed down the hallway towards Frazier's apartment and then returned with Appellant towards her apartment. At 2:09 p.m. Appellant headed towards Malone's apartment. Another individual, Mr. Calhoun, left Malone's apartment at 2:22 p.m., walked down the hallway and came back at 2:23 p.m. At 2:40 p.m., Frazier walked down the hallway with a towel, towards the elevator. At 2:41 p.m., Frazier and his relatives walked toward the elevator and the younger relative went back to Frazier's apartment at 2:45 p.m.
 {¶ 16} Melvin further testified that he knew Williams, and after the police arrived, he took them to talk to him. Williams led them to Appellant, who was in Malone's apartment.
 {¶ 17} To find Appellant guilty of aggravated robbery, the jury had to find beyond a reasonable doubt that "in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [Appellant] [i]nflict[ed], or attempt[ed] to inflict, serious physical harm on another." R.C. 2911.01(A)(3).
 {¶ 18} To find Appellant guilty of theft from the elderly, the jury had to find beyond a reasonable doubt that Appellant, with the purpose to deprive Frazier of property, knowingly obtained or exerted control over the property by deception, threat, or intimidation. R.C. 2913.02. Further, because Frazier is an elderly person, a violation of R.C. 2913.02 is theft from an elderly person. R.C. 2913.02(B)(3).
 {¶ 19} "This Court will not overturn a conviction because the jury chose to believe the testimony offered by the prosecution."State v. Tobey, 9th Dist. No. 05CA0103-M, 2006-Ohio-5069, at ¶ 27. We have held that, "in reaching its verdict, the jury is free to believe, all, part, or none of the testimony of each witness."Prince v. Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35, citing State v. Jackson (1993), 86 Ohio App.3d 29, 33. As the finder of fact, the jury was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. See State v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus. Thus, this Court will defer to the factfinder's judgment on matters of credibility. State v.Young, 9th Dist. No. 22636, 2006-Ohio-68, at ¶ 35, citing Statev. Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at *6.
 {¶ 20} Here, the jury found Frazier's testimony credible, despite the inconsistencies that Appellant pointed out in his brief.[1] These contradictions related to the circumstances leading up to the incident inside Frazier's home, and the jury was entitled to find these contradictions were not significant and that Frazier's testimony was credible. Further, Appellant's counsel stated at oral argument that during Appellant's testimony at trial, it appeared that he was "not connected with reality," and that he was rambling on the stand. We will not overturn his conviction simply because the jury chose to believe Frazier over Appellant.
 {¶ 21} After a review of the record, this Court cannot conclude that the jury created a manifest miscarriage of justice in finding Appellant guilty of aggravated robbery and theft from the elderly. As this Court has disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency on these claims. Roberts, supra, at *5
 {¶ 22} Appellant also argues that the evidence was insufficient as to his conviction for disrupting public serves.[2] Specifically, Appellant argues that at no time did Appellant disrupt phone service from Frazier's apartment. We observe that Appellant did not properly raise a challenge to the sufficiency of the evidence. Appellant moved for acquittal pursuant to Crim.R. 29 at the close of the State's evidence and also renewed the motion at the close of all the evidence, which the court denied in both instances. However, when Appellant initially raised the motion, he argued specific grounds for the motion. Particularly, counsel argued with respect to the aggravated burglary, aggravated robbery and kidnapping charges, but he did not raise a challenge to the disrupting public service or theft from the elderly charges.
 {¶ 23} It is a fundamental principal of appellate review that a court will not consider an error that an appellant was aware of, yet failed to bring to the attention of the trial court.State v. Awan (1986), 22 Ohio St.3d 120, 122. We have held that if an appellant sets forth specific grounds in his motion for acquittal, he waives review of all grounds not specified. Statev. Pruiett (Aug. 18, 2004), 9th Dist. No. 21889, 2004-Ohio-4321, at ¶ 25. As Appellant set forth specific grounds in his Crim.R.29 motion, but did not include any argument regarding the interruption of public services charge, he has waived any challenge to the sufficiency of the evidence with respect to this conviction.
 {¶ 24} Consequently, Appellant's first two assignments of error are overruled.
 ASSIGNMENT OF ERROR III
"DEFENSE COUNSEL WAS INEFFECTIVE THEREBY DENYING APPELLANT EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNTIED [SIC] STATES CONSTITUTION[.]"
 {¶ 25} In his final assignment of error, Appellant claims trial counsel was ineffective. We disagree.
 {¶ 26} In evaluating an ineffective assistance of counsel claim, this Court employs a two step process as described inStrickland v. Washington (1984), 466 U.S. 688, 687. First, the court must determine whether there was a "substantial violation of any of defense counsel's essential duties to his client."State v. Bradley (1989), 42 Ohio St.3d 136, 141; State v.Lytle (1976), 48 Ohio St.2d 391, 396. Second, the court must determine if prejudice resulted to the defendant from counsel's ineffectiveness. Bradley, 42 Ohio St.3d at 141-142, citingLytle, 48 Ohio St.2d at 396-397, vacated in part on other grounds. Prejudice exists where there is a reasonable probability that the trial result would have been different but for the alleged deficiencies of counsel. Bradley,
42 Ohio St.3d at paragraph three of the syllabus. Defendant bears the burden of proof, and must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland, 446 U.S. at 687.
 {¶ 27} In support of his final assignment of error, Appellant contends that his trial counsel was ineffective because he did not request a self-defense instruction, he failed to cross examine Frazier on the inconsistencies in his testimony and he failed to address Appellant's mental health issues.
 {¶ 28} By claiming self defense, Appellant "concedes [that] he had the purpose to commit the act, but asserts that he was justified in his actions." State v. Howe (July 25, 2001), 9th Dist. No. 00CA007732, at *2, quoting State v. Barnd (1993),85 Ohio App.3d 245, at 260. Here, Appellant never admitted to taking the money from Frazier. In fact, he denies taking any money. Therefore, a jury instruction on self-defense would have contradicted Appellant's statements that he did not take any money from Frazier.
 {¶ 29} Further, theft is the predicate offense underlying both theft from the elderly and aggravated robbery. If the jury found credible evidence that there was a theft, an instruction on self-defense would not be applicable. Even if Appellant was justified in hitting and tying up Frazier, this does not provide a justification for the theft. Because a self-defense claim would not provide a justification for the theft element of aggravated robbery, there was no basis for requesting a jury instruction. Finally, during oral arguments, counsel for Appellant stated that he was not suggesting that self-defense would have prevailed, but rather that the jury should have been instructed on it. Appellant has not sustained his burden to prove that the outcome of his trial would have been different had the jury been instructed on self-defense. Therefore, counsel was not ineffective for failure to request a jury instruction on self defense.
 {¶ 30} Appellant also contends that trial counsel was ineffective because he did not cross-examine Frazier on inconsistencies in his testimony. "The extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." State v. Leonard,104 Ohio St.3d 54, 2004-Ohio-6235, at ¶ 146. Further, Appellant has failed to show a reasonable probability that the trial result would have been different had his counsel pointed out these inconsistencies. As stated above, the jury heard these inconsistencies and through their verdict, determined them to be insignificant.
 {¶ 31} Lastly, Appellant argues that trial counsel was ineffective because he did not address Appellant's mental health issues. Appellant's counsel conceded at oral argument there is not much on the record before this Court regarding Appellant's mental issues. Further, Appellant has failed to demonstrate that a competency hearing would have clearly changed the outcome of the trial court. According to R.C. 2945.37(G),
"A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial[.]"
 {¶ 32} The record simply does not provide sufficient evidence to demonstrate that Appellant did not understand the nature of the proceedings against him. Nor does the record indicate that Appellant was unable to assist in his own defense. Therefore, Appellant's third assignment of error is overruled.
 III. {¶ 33} Appellant's three assignments of errors are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. Whitmore, J. Concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] Appellant's brief points out the following inconsistencies in Frazier's testimony: (1) Williams never left and came back to his apartment, (2) Williams and Appellant were only in his apartment for a few minutes and then both left immediately after getting money for the meat, (3) his hands were tied behind his back, (4) Appellant punched him as soon as he opened the door to his apartment, robbed him, tied him up and left, (5) Appellant hit him seven to ten or more times, and (6) originally he told police that Appellant stole $40 but later testified that it was actually $57.
[2] Appellant does not challenge the weight of the evidence in regards to the disruption of public service count, and therefore we do not test the weight of this count. However, he does challenge the count in regards to the sufficiency of the evidence.